## REESE v. REESE *et al.*

1. A father who, while *non compos mentis* and being moved by the fraud and undue influence of his insolvent son, a non-resident of the State, turns over to the son for collection and for management of the proceeds a promissory note, may, after suit has been brought upon the note by the son in his own name, maintain a bill or petition in the county in which the suit on the note is pending, to enjoin the son from proceeding with the suit, and for the appointment of a receiver to recover and take charge of the proceeds, the bill or petition alleging that the son intends to use the suit for the collection of the money for his own benefit, and to carry the money beyond the limits of the State and convert it to his own use in consummation of his fraudulent purpose.
2. A lunatic, or person *non compos mentis*, having no legal guardian, may sue by any competent person as his next friend. And where the question of sanity or insanity is involved in the subject-matter

of the suit, the question may be tried irrespective of whether a commission of lunacy has been issued or not.

3. On general demurrer a petition should not be dismissed because some of the parties are improper or unnecessary, nor because some of the facts alleged may be superfluous or afford no cause for relief, nor because some of the relief prayed for may not be appropriate, these being matters for special demurrer at the first term.

May 18, 1892.

Parent and child. Fraud. Insanity. Injunction and receiver. Demurrer. Practice. Before Judge RONEY. McDuffie superior court. September term, 1891.

B. Earnest Reese excepted to the overruling of his general demurrer to the petition of John A. Baston as next friend of Benjamin T. Reese, and of Justin M. Reese for himself and as guardian of Mattie Lee Clark. This petition alleges the following: Benjamin T. Reese was twice married, and is a widower. The issue of his first marriage are, Gaylord A. Reese, Ellora H. Marshall and B. Earnest Reese; of the second, Justin M. Reese, and Columbia Clark, deceased, the mother of Mattie Lee Clark, a minor orphan. The children of Benjamin T. Reese are of the age of twenty-one years. He has given to all his children some property; the property given by him to B. Earnest Reese has exceeded in value the property given by him to Justin M. and Mattie Lee and her mother. He also gave B. Earnest a thorough collegiate education, whereas his other children received only a common school education. He is now seventy-seven years old. For two or more years his mind has been weakening and going into decay, and since the death, on June 2, 1889, of his wife, the mother of Justin M., the mind of Benjamin T. has been almost a total wreck, and he has been mentally incapable of any rational attention to his business, and has been, so far as any business affairs are concerned, *non compos mentis.* His mind has been so weak that it could be easily swayed and excited by the slightest appeals to his pas-

sions. When B. Earnest Reese finished his collegiate course about 1868, after living in Atlanta and other places for some time, he moved to Missouri where he has resided until the present. He would communicate to his relatives at home the most flattering accounts of his success in business, and finally he notified them that he had contracted marriage with a member of one of the most wealthy and influential families of Missouri. He visited his old home in Georgia only at long intervals, but in January, 1890, he again visited his father, and upon his arrival set to work to ascertain his father's financial condition. He found that Benjamin T. owned about two hundred and fifty acres of land in McDuffie county, of the value of $1,500, but from which Benjamin T. derives no income, as it is not now rented out or cultivated. He also found that Benjamin T. had on deposit with Scott, a merchant of Thomson, McDuffie county, $155 in currency, some notes for small amounts, and a note for $2,552, given to him by T. E. Watson and J. F. Watson, both of McDuffie county, for the purchase money of three hundred and nineteen acres of land in that county, known as the Ginger Hill place, dated December 28, 1888, and due by installments, $500 on December 28, 1889, and the balance in three equal annual payments. B. Earnest Reese immediately set about to devise means to possess himself of said currency and note, and taking advantage of his father's feeble mind and playing upon his prejudices and passions, he set to work to persuade Benjamin T. that he was not treated with proper respect and attention by the other members of his family and especially by Justin M., and persuaded Benjamin T. to believe that it was necessary for his protection and well-being that B. Earnest should assume the control and management of his affairs, pretending to him and others that he had no motive of pecuniary gain to himself in thus assuming

control, and asserting that his wife was rich and amply able and willing to support him. By these and other deceitful means and practices he persuaded Benjamin T. to turn over the control of his affairs and assets to him, B. Earnest; he thus procured possession of the currency and notes held by Scott, and further procured from Benjamin T. a power of attorney to B. Earnest to sell all the real estate and personalty, and collect all notes and other evidences of indebtedness owned by Benjamin T. Armed with this authority he attempted to collect from the Watsons the installment on their note past due, which they refused to pay upon receiving notice from Justin M. not to do so. B. Earnest then changed his tactics, and by the same and other fraudulent and deceitful means procured from Benjamin T. a transfer of the note of the Watsons, and a deed to himself of the Ginger Hill place, and then returned to Missouri and attempted to collect the note from the Watsons. Failing in this, he placed the note in the hands of Twiggs & Verdery, a law firm, in whose possession it now is, and who have brought suit on it in the name of B. Earnest Reese against the Watsons, which suit is pending. Should B. Earnest collect said note he would appropriate the proceeds to his own use. All the property heretofore given to B. Earnest by B. T. Reese was given absolutely, but B. T. Reese reserved a life-interest in the property deeded to petitioners, but put them into immediate possession, giving them the entire use and control of it with no intention of ever claiming any of the income of it, unless the income derived from other property owned by Benjamin T. should be insufficient for his support. So long as he could have the income represented by the Watson note it would be unnecessary for him to utilize the life-interest reserved in the property given to petitioners; but deprived of this income, he would need for his support said life-interest.

Petitioners are thus specially interested in the Watson note, that they may retain the use of the property given them by B. T. Reese during his life, and are generally interested as his prospective heirs at law, and at his death would be generally and specially affected by the conversion of this money by B. Earnest, who is totally insolvent and would be unable to respond in damages to any suit that might be brought against him. He obtained and still retains possession of the Watson note through fraud. At the time of turning over the note to him and since that time up to the present, Benjamin T. Reese was *non compos mentis*, and mentally incapacitated for making any gift. Owing to the undue influence exercised by B. Earnest over him, B. Earnest could control him while present; but so soon as he is removed from personal contact with B. Earnest he denies he has made any alleged gift as claimed by B. Earnest. Owing to his weakness of mind, B. Earnest made him believe that the Watsons were endeavoring to avoid the payment of their note and were endeavoring to defraud him out of it, and that it was necessary for him to turn it over to B. Earnest that he might collect it for B. T., and prevent the Watsons defrauding him. B. T. Reese delivered the note to B. E. Reese, believing he only wanted to collect the money for the use of and to deliver to B. T. Reese; and B. T. Reese did not intend, when he delivered the note to B. E. Reese, to make a gift to B. E. Reese, but intended then and wishes now the title to the note to remain in him, B. T. Reese, and the proceeds when collected to be delivered to him. The Watsons are solvent and amply able to pay the note, and it could have been collected by B. T. Reese without the aid or interference of B. E. Reese, who never intended to turn over the proceeds of it to B. T. Reese, but intended from the start, and still intends, to convert the proceeds of it fraudulently to his own use.

All charges of unfilial conduct made by him against Justin M. Reese are false, and were made to B. T. Reese for the purpose of prejudicing his mind against Justin M., and that B. E. might acquire a greater influence over the mind of B. T., and accomplish his own selfish ends. The prayers are, that the suit of B. Earnest Reese against the Watsons be enjoined; that the Watsons be required to pay the installment now due on the note into court, and be enjoined from paying over the money now due, or any of the installments to become due, to B. Earnest Reese or his attorneys; that B. Earnest Reese be enjoined from collecting any part of the note or disposing of it, and be required to deposit it in court to be placed in the hands of a receiver; that a receiver be appointed to take charge of all the assets of B. T. Reese, and especially of the note, with full power to collect it by suit or otherwise, as the payments fall due on it; that he apply the income of the assets of B. T. Reese, and so much of the *corpus* as may be necessary, to the support of B. T. Reese during his life, and hold whatever of assets may be in his hands at the death of B. T. Reese, as of his estate to be distributed to his heirs at law; that the receiver pay Twiggs & Verdery the usual fees for bringing money into court, and cost of this proceeding and petitioners' attorney's fees; that B. Earnest Reese be required to deliver to the receiver the deed to the Ginger Hill place, and to execute a reconveyance to B. T. Reese or otherwise, as may be directed, and be enjoined from interfering in any manner with any of the assets of B. T. Reese; that a guardian *ad litem* be appointed to represent B. T. Reese in this litigation; and for general relief.

Twiggs & Verdery, for plaintiff in error.

J. T. West and T. E. Watson, *contra.*

Simmons, Justice.

1. B. Earnest Reese brought an action in the statutory

form against Thomas E. Watson and J. Forest Watson, upon a promissory note of the defendants to Benjamin T. Reese. Pending the action, John A. Baston, as next friend of said Benjamin T. Reese, and Justin M. Reese for himself and as guardian of Mattie Lee Clark, filed a petition in the same court, to enjoin the action from proceeding, and for the appointment of a receiver to recover and take charge of the proceeds, and for other relief. The substance of the petition will be found set out in the reporter's statement. To this petition there was a general demurrer, and the overruling of this demurrer is the judgment complained of.

The allegations present a strong case for relief. It is alleged, among other things, that Benjamin T. Reese is the father of B. Earnest Reese, and that while *non compos mentis* and being moved by the fraud and undue influence of said Earnest, who is insolvent and a non-resident of the State, he turned over to him for collection and for management of the proceeds, the promissory note which is the subject of the suit here sought to be enjoined; and that said Earnest intends to use the action for the collection of the money for his own benefit, and to carry the money beyond the limits of the State and convert it to his own use in the consummation of his fraudulent purpose. From these allegations it is clear that the petition is not demurrable for want of equity, in so far as the action is brought by the next friend of Benjamin T. Reese for his benefit.

2. The point most strongly insisted upon by counsel for the plaintiff in error was, that no suit can be brought in behalf of a lunatic or person *non compos mentis*, except by a legal guardian appointed after the question of sanity or insanity has been tried by a commission of lunacy as provided by the code, §§1855 *et seq*. There is no statutory provision, however, which prevents a lunatic who is without a legal guardian from suing by

any competent person as his next friend, and we know of no reason which should preclude one from claiming the protection of the courts until his mental status is adjudicated and a legal guardian appointed. The privilege of representation by next friend is accorded to all persons not *sui juris*, the code, §4179, declaring that they " may appear, either by guardian or next friend, or guardian *ad litem* appointed by the court"; and we think this applies as well to lunatics as to any other persons under disability, whether in its strict sense the phrase "not *sui juris*" may be properly applied to mental capacity or not. Looking to the general authorities on the subject, we find it laid down in a leading work on the law of insanity, that " when a person is in fact insane, but has not. been so adjudged by a competent tribunal, or placed in charge of a committee or guardian, the courts, whether of·law or equity, have jurisdiction to entertain suits brought by one as next friend of the insane person." Buswell, Insanity, §120. And in 11 Am. & Eng. Enc. of Law, 126, it is said: " Where a person is insane but has not been judicially adjudged so, suits both at law and in equity should be brought by some person as next friend." Under our code it is in the power of the court to guard against representation by irresponsible persons and to see that the party at interest is as fully protected as if represented by a legal guardian, the section above quoted further providing that "the court may require such bond as shall protect the interest of the person under disability."

3. Objections that some of the parties were improper or unnecessary, or that some of the facts alleged were superfluous or afforded no cause for relief, or that some of the relief prayed for was inappropriate, were matters for special demurrer at the first term, and on a general demurrer a petition should not be dismissed for these reasons. A demurrer which is merely general should be

overruled if any part of the petition be sustainable. This demurrer being to the whole bill, and there being good matter for equity to deal with, the court did not err in overruling it.  *Hazlehurst* v. *Railroad Co.*, 43 *Ga.* 13; *Lowe* v. *Burke*, 79 *Ga.* 166.    *Judgment affirmed.*