## Michael J. Roughan v. James L. Morris, by his Next Friend.

1.  COURTS OF CHANCERY—*Power to Conserve the Estate of a Lunatic.*
—It may be regarded as well settled in our State that the power exists in a court of chancery to conserve the estate of a lunatic when such action is necessary.

2.  LUNATICS—*For What Purpose Suits May be Maintained by a Next Friend.*—A suit may be maintained by a next friend for the purpose of protecting the estate of the lunatic. through a receivership, until a conservator can be appointed to act for him.

3.  PARTIES—*Bill to Avoid the Deed of an Insane Person.*—The person who brings a bill to avoid the deed of an insane person, must have power to act for such person and bind him and his estate.

Appeal from the Superior Court of Cook County; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in this court at the October term, 1899. Affirmed. Opinion filed February 26, 1900.

Statement.—This is an appeal from an interlocutory order appointing a receiver.

The bill of complaint was exhibited by James L. Morris, by Arthur Morris, his brother and next friend. The bill alleges that James L. Morris is an insane person; that he is a widower and had no children, and that Arthur Morris, who appears as his next friend in the suit, and George Morris, his two brothers, are his next of kin. The bill also alleges that the defendant, Michael J. Roughan, procured the signature of James L. Morris to a certain pretended power of attorney, giving the defendant full control and dominion over all the property of said Morris, consisting of a large business and real estate, improved and rented; that for a considerable space of time said Roughan had been in complete and undisturbed possession of said property; that said Roughan had made no report of any of his doings in the premises; that by reason of his mismanagement the business was becoming deeply involved, was likely to be ruined, and the income of Morris destroyed, unless the same was cared for; that the creditors of the complainant

were refusing to grant any more credit to the business so long as it was under the control of the defendant; that the landlord was about to levy a distress warrant for non-payment of rent, and that if the assets of the complainant were properly applied this would be wholly unnecessary; that defendant had collected and disposed of, to his own use, large sums of money belonging to complainant; that the defendant fails and neglects to pay the debts of the estate, and willfully and maliciously permits the estate to become more and more indebted; that the defendant is insolvent, irresponsible, and not a proper person to conduct said business; that about five weeks must necessarily elapse before the matter of the insanity of Morris can be heard in the Probate Court of Cook County, where a petition has been filed by Arthur Morris and George Morris, brothers and next of kin of complainant, asking for the appointment of a conservator.

The prayer of the bill is *inter alia* for the appointment of a receiver to collect the rents of real estate owned by James L. Morris, and to manage the business of said Morris until a conservator can be appointed by the Probate Court of Cook County.

Upon the application for appointment of a receiver, a hearing was had upon bill of complaint and affidavits, and oral testimony. An interlocutory order was entered appointing one Frank D. Kitchner as receiver. This appeal is from that order.

Fred H. Atwood and Frank B. Pease, attorneys for appellant.

M. S. Bradley, attorney for appellee; Cutting, Castle & Williams, of counsel.

Mr. Presiding Justice Sears delivered the opinion of the court.

But one question of controlling importance is presented upon this appeal, viz.: whether the suit may be entertained

for the purpose indicated when commenced by an insane person by his next friend.

The grounds for the intervention of a court of chancery are here ample, if the suit were brought by a complainant of sound mind and in his own name. The relation of the parties, the insolvency of defendant, the refusal or failure to account, and the waste alleged, constitute sufficient ground for intervention of a court of equity, if the suit were brought by John L. Morris of sound mind. The question then is, he being a lunatic, could the suit be brought by his brother as his next friend.

The statute, Sec. 13, Chap. 86, R. S., provides as follows in relation to conservators:

" He shall appear for and represent his ward in all suits and proceedings unless another person is appointed for that purpose, as conservator or next friend; but nothing contained in this act shall impair or affect the power of any court to appoint a conservator or next friend to defend the interests of said ward impleaded in such court, or interested in a suit or matter therein pending, nor its power to appoint or allow any person as next friend for such ward to commence, prosecute or defend any suit in his behalf, subject to the direction of such court."

Could the court then allow Arthur Morris, as next friend, to maintain this suit for the purpose disclosed by the bill?

It is contended by appellant that the question is determined adversely to the maintenance of the suit by the decision of our Supreme Court in Covington v. Neftzger, 140 Ill. 608. If the purpose of this suit were merely the termination of the agency created by the power of attorney to appellant and for an accounting, we think it clear that the case would be governed by the Covington case, and that the bill would not lie for such purpose when brought by one volunteering as next friend. But here the purpose of the bill is merely to conserve the estate until a conservator might be appointed by the Probate Court.

It would seem upon principle that a court of chancery should have the power to protect the estate of an insane person until a conservator could be appointed by the Pro-

Roughan v. Morris.

bate Court, to which jurisdiction the appointment of conservators of insane persons is committed by the law of this State. The jurisdiction of the chancellor here, to thus appoint this receiver, can not be maintained upon the ground alone that the subject-matter of the suit is a matter proper for equitable cognizance, that is, the agency, the waste, and the right to an accounting, for in respect to such relief as the complainant might be entitled to in these matters, the suit could not be maintained by one volunteering as next friend, under the decision in the Covington case. But it would seem that the suit may be maintained under the general chancery power to protect the estates of lunatics, and for the limited purpose of such protection only as could be shown to be necessary until a conservator might be appointed by the Probate Court.

In England the care of lunatics and their estates was vested in the sovereign, and although the exercise of this care and control was delegated by the sovereign to the chancellor, yet it was always treated as a special prerogative of the crown, and not as a matter within the general chancery powers.

The question of the inherent powers of our courts of chancery in relation to this subject has been treated differently in different States. In some States it has been held that the subject had so far become a matter of chancery jurisdiction in England, that when by constitution or statute the powers and jurisdiction of the Court of Chancery of England were given to our courts of chancery, this element of jurisdiction was thereby conferred. In others it has been held that the power which the English chancellor exercised in this behalf was not a judicial power, but a delegated prerogative right, derived from the crown, and by special delegation in each instance. But the courts so holding have, at least in some cases, also held that when there was no special provision by the commonwealth giving courts of chancery this jurisdiction and power, yet it was to be considered as arising *ex necessitate* for the protection of the persons and property of the commonwealth.

Whether the conclusion that our courts of chancery have this jurisdictional power is reached by the one process of reasoning or the other, is of little importance. It may be regarded as well settled in our State that the power exists in a court of chancery to conserve the estate of a lunatic, when such action is necessary. Dodge v. Cole, 97 Ill. 338.

The question then is, whether such protection may be extended by a court of chancery for the period only which must intervene before a conservator can be appointed by a court of probate. The only contention to the contrary is based upon the decision in the case of Covington v. Neftzger, *supra*. The gist of the decision in that case is expressed in the following language of the court:

" A person suing as next friend has no authority to bind the lunatic or his estate. * * * It would be a dangerous rule to hold that such a person might, at his own will or discretion, come into court for the purpose of impeaching a transaction in which he has no interest, as trustee or otherwise, and over which he has no control. * * * We think it is a well settled principle that the person who brings a bill to avoid the deed of an insane person, must have power to act for such person and bind him and his estate."

The court also considered whether the rule of the trial court upon Covington, the next friend, to file a bond for costs, amounted to an order authorizing him to sue. It seems clear that the court did not intend to hold that the trial court might not in any case " allow " a suit to be maintained by a next friend, and did not construe the section of the statute above set forth to that effect. What the decision does hold is that a volunteer can not thus elect to set aside the deed of the lunatic. And there is a distinction indicated between an attempt to procure equitable relief in chancery by setting aside a deed for a lunatic who appears only by next friend, and an effort merely to protect the estate of the lunatic through a suit brought by next friend until a committee or conservator can be appointed to represent him.

The case of Jones v. Lloyd, 18 Law Rep. Eq. Cas. 265, which is cited in the Covington case and quoted from for

the express purpose of illustrating this distinction, would seem to precisely apply to the conditions here presented. In that case the court said:

"Can a suit be instituted by the lunatic, not found so by inquisition, by his next friend? I have no doubt it can. There is authority upon the subject, and it seems to me so distinct that I have no occasion, really, to refer to the reason, for I think the cases of Light v. Light (25 Beav. 248) and Beall v. Smith (Law Rep. 8 Ch. 85) are such authorities; but independently of the unreported case of Fisher v. Nelles, where I know the point was discussed, and independently of authority, let us look at the reason of the thing. If this were not the law, anybody might, at his will and pleasure, commit waste on a lunatic's property, or do damage or serious injury and annoyance to him or his property, without there being any remedy whatever. In the first place, the Lord Justices or the Lord Chancellor are not always sitting for applications in lunacy. In the next place, if they were, everybody knows it takes a considerable time to make a man a lunatic by inquisition. * * * Is it to be tolerated that any person can injure him or his property without there being any power in any court of justice to restrain such injury? Is it to be said that a man may cut down trees on the property of a person in this unfortunate state, and that because no effort of his can be made, no member of his family can file a bill in his name as next friend, to prevent that injury? Is it to be allowed that a man may make away with the share of a lunatic in a partnership business, or take away the trust property in which he is interested, without this court being able to extend its protection to him by granting an injunction at the suit of the lunatic by a next friend, because is not found so by inquisition? I take it those propositions, when stated, really furnish a complete answer to the suggestion that he can not maintain such a suit. Of course they do not answer the question as to how far he may carry it; but that he can maintain such a suit for the purpose of protection, for the purpose of obtaining, as in this case, a receiver, I should think there can be no doubt whatever."

Other decisions holding to like doctrine are: Reese v. Reese, 89 Ga. 645; Whetstone v. Whetstone, 75 Ala. 495.

We are of opinion, therefore, that while under the decision in the Covington case this suit brought by next friend

might not be maintained for the ultimate purpose alone of annulling the deed by which the agency of the defendant was created, nor for the obtaining of an accounting alone, yet it may be maintained for the sole purpose of protecting the estate of the lunatic, through a receivership, until a conservator can be appointed to act for him.

The order is affirmed.