## McGARRAH *et al.,* executors, *v.* BANK OF SOUTH-WESTERN GEORGIA *et al.,* and *vice versa.*

1. A receiver may be appointed in a proper case, though no prayer for his appointment is made by either party.
2. In the present case there was no abuse of discretion in appointing a receiver; and important and doubtful questions of law which were not passed on by the trial judge will not be decided.
3. Rulings made by the court during the progress of the hearing, which in all probability did not affect its decision in appointing a receiver, will not, even though erroneous, require a reversal of the judgment.

Submitted March 24, — Decided April 8, 1903.

Equitable petition. Before Judge Littlejohn. Sumter superior court. January 19, 1903.

*J. H. Lumpkin* and *W. P. Wallis,* for plaintiffs.
*E. A. Hawkins* and *W. A. Dodson,* for defendants.

COBB, J. This was a controversy between the executors of the will of Samuel McGarrah on the one side, and the Bank of Southwestern Georgia and M. B. Council on the other. The executors filed a petition asking for certain equitable relief against the bank and Council, and the bank filed a cross-petition praying for an injunction against the executors. A brief history of the facts which led up to the litigation is as follows: The decedent Samuel McGarrah, and the defendant M. B. Council, entered into a partnership in 1887, for the purpose of engaging in the warehouse and commission business, the partners taking an equal interest in the business. In 1890 the tract of land which forms the principal subject-matter of the controversy, together with its appurtenances, was conveyed to the partnership. Samuel McGarrah, one of the partners, entered into possession of the land and cultivated it until his death. After this conveyance to the partnership it became indebted to the bank, and executed to it a mortgage on the land and certain personal property. The defendant Council also gave to the bank his individual obligation for a specified sum of money, as security

for the payment of the debts due it by the partnership.    Samuel
McGarrah died on December 6, 1901.    On December 30, 1901,
the bank rented to E. Ross McGarrah and John M. McGarrah, two
of the plaintiffs, the land which had been mortgaged to it by the
partnership, together with certain personal property described in
the rent contract, which was to expire on December 15, 1902.    In
August, 1902, M. B. Council, as surviving partner of the firm of
Council & McGarrah executed to the bank a deed to the land in
controversy, in payment of the debt due the bank by the partner-
ship, and upon the execution of this deed the bank cancelled the
mortgage given by the partnership and surrendered it to Council.
When the rent contract made by the two McGarrahs with the bank
expired, the bank sent its agent to take possession of the property.
Much controversy and negotiation resulted from the effort made
by the bank to acquire possession, and finally E. Ross McGarrah,
who was in possession under the rent contract, moved away and
M. P. Pickett, one of the plaintiffs, entered into possession and
claimed to hold the property as agent for the executors of Samuel
McGarrah.    After this the plaintiffs' petition was filed.    It prayed
that the bank be enjoined from dispossessing petitioners from the
premises; that the deed from Council as surviving partner to the
bank be declared null and void; and that title to the property be
decreed in the executors upon their payment to the bank of a spec-
ified sum of money.    The petition charged collusion between the
bank and Council, that the scheme entered into between them was
fraudulent, and that the action of Council was designed for the
protection of his individual interests, and operated against those of
the partnership.    The court granted a restraining order, but pro-
vided that the same would be vacated unless plaintiffs would, within
six days, give a bond conditioned to pay the defendants what-
ever amount they might recover on the final hearing of the case.
The plaintiffs failed to give this bond, and, when the case came on
for a hearing, announced that they would not seek a permanent
injunction against the defendants, but would rely on the other pray-
ers in their petition.    The bank thereupon filed a cross-petition,
asking that the plaintiffs be enjoined from interfering with or ex-
ercising any dominion or control over the land or personal prop-
erty in controversy, and that plaintiffs, either as executors of the
will of Samuel McGarrah, or as his heirs at law, be required to

convey to the bank the legal title to the land. There was no prayer by either the plaintiffs or the defendants for the appointment of a receiver. Certain affidavits and documentary evidence were submitted to the judge, who, after considering the same and the pleadings in the case, passed an order appointing a receiver to take possession of the property in dispute and preserve the same subject to the further order of the court. The plaintiffs thereupon excepted to the order appointing a receiver, and the defendants filed a cross-bill complaining of the refusal of the court to grant the injunction prayed for by them.

1. One of the assignments of error was that the judge had no authority to appoint a receiver in the absence of a prayer therefor by one of the parties. This exception is not well taken. The appointment of a receiver is a matter resting in the discretion of the court, and it is its duty to make the appointment whenever it is necessary for the protection of the interests of the parties to the litigation. A receiver when appointed is an officer of the court, and he takes charge of and holds the property involved in the litigation, under the direction of the court, for the purpose of preserving it for the person in whose favor judgment may be ultimately rendered. He is not in any sense the representative of either party, even though one of them may expressly ask for his appointment. A prayer for the appointment of a receiver would amount to nothing more than a suggestion to the court that a proper case had been made for his appointment, and as a general rule it would be entirely discretionary with the court whether it acted on this suggestion or not. We can perceive no reason why the chancellor should not, on his own motion, appoint a receiver whenever a proper case is made, even though neither party to the controversy asks for or desires his appointment. Such seems to be the general practice of courts of chancery both in England and America. See Beach, Rec. (Alderson's ed.) § 143; High, Rec. (3d ed.) §§ 83, 98; Malcolm *v.* Montgomery, 2 Moll. 500; Osborne *v.* Harvey, Y. & C. 116; Whitney *v.* Buckman, 26 Cal. 447, 453; Henshaw *v.* Wells, 9 Humph. 567; Ladd *v.* Harvey, 1 Foster, 514; Clyburn *v.* Reynolds (S. C.), 9 S. E. 973 (7). There are some authorities which hold that a receiver will not be appointed before decree, unless the bill or petition contains a specific prayer therefor. 2 Dan. Ch. Pl. & Pr. (6th Am. ed.) * 1734 and notes. See also Chicago Ry. Co. *v.* St.

Clair (Ind.), 42 N. E. 225; Bowman *v.* Bell, 14 Sim. 392; Wright *v.* Vernon, 3 Drew, 112. The authorities holding the other view are, however, decidedly in the majority, and we believe the ruling we make is in accordance with the better practice and the theory upon which receivers are appointed. There is no statute in this State which affects the question one way or the other, and it must be decided upon the general powers and practice of courts of chancery in such cases. The case of *Augusta Ice Co.* v. *Gray,* 60 *Ga.* 344, which is cited by Mr. Beach as holding the contrary of the ruling now made, does not do so. There is, it is true, some language in the opinion of Chief Justice Warner which seems to warrant the construction put upon that decision by the learned author; but the decision of the court reversing the judgment appointing a receiver was put mainly upon the ground that the facts did not make a proper case for his appointment, even if there had been a prayer. The absence of a prayer was merely an additional reason given by the Chief Justice why the appointment was erroneous. The entire opinion makes it perfectly clear that the judgment would have been reversed even if there had been a prayer in the bill expressly asking the appointment of a receiver.

2. Looking at the merits of the case, we are not disposed to control the discretion of the trial judge in appointing a receiver. On the contrary, we think the appointment was not only authorized but proper. The facts of the case were complicated, and numerous perplexing questions of both law and fact were raised. It is difficult to determine from the pleadings and the evidence either who is in actual possession of the property, or who is entitled to the possession. The plaintiffs claim that the bank is at most only a tenant in common with them; and the bank claims to be the sole owner. The bank claims that it acquired actual possession of the property through the surrender of possession by the McGarrahs, its tenants, to its agent; while the plaintiffs deny this, and aver that the bank's agent never acquired possession of the property, and that Pickett is in actual possession as the representative of the executors. Several important and intricate questions of law are involved, such as, attornment to a person other than the landlord, the status of real property conveyed to a partnership, the rights of a surviving partner over the partnership assets, etc. On the question of possession and on some of the other material questions involved

the evidence was conflicting.    Viewing the case as a whole, we think the chancellor wisely exercised his discretion.    See *Douglas* v. *Fitzgerald*, 56 *Ga.* 526; *Graham* v. *Electrical Co.*, 75 *Ga.* 878 (2); *Comer* v. *Comer*, 92 *Ga.* 569.    The court had jurisdiction of the parties and of all the matters involved in the litigation.    In its opinion the proper course to pursue was to appoint a receiver and hold the property until the matters in controversy could be adjudicated.    The appointment of the receiver worked no hardship on the parties.    It gave to neither the advantage of the other.    The object of the order was merely to preserve the property and the status of the parties and prevent unnecessary bickering and controversy among them until it should be finally determined who was the rightful owner of the property.    Various nice and doubtful questions of law were argued in the briefs of counsel.    These were not passed upon by the chancellor when he appointed the receiver, but were left open for decision when the case should come on for a final hearing.    We therefore express no opinion on any of them.    See, in this connection, *Leake* v. *Smith*, 76 *Ga.* 524.

3. Numerous assignments of error are made in the bill of exceptions of the plaintiffs, upon rulings of the court in admitting certain evidence offered by the defendants.    In all probability none of this evidence, even if improperly admitted, had any effect upon the action of the judge in appointing a receiver.    With all of such evidence eliminated, the appointment of the receiver would still have been proper, and would doubtless have been made.    The judgment appointing the receiver will not be reversed for erroneous rulings made during the trial, which ought not to have affected, and most probably did not influence, the conclusion reached by the judge that the appointment of a receiver was necessary and proper.    This is but a branch of that familiar rule, that harmless errors will not work a reversal of the judgment of the trial court.    We have not, therefore, stopped to inquire whether the rulings of the judge of which complaint is made are erroneous; for, conceding that every contention with reference thereto made by the plaintiffs is correct, the judgment appointing a receiver ought still to be affirmed.    What is said above sufficiently disposes of the assignment of error made in the cross-bill of exceptions.    The judge thought that under the facts a proper case was made for the court, through its receiver, to take charge of the property, thus temporarily depriving both sides

of it and giving neither the advantage of the other. We will not interfere with his discretion in the matter.

*Judgment on main bill of exceptions affirmed ; cross-bill dismissed. By five Justices.*