PARRISH *v.* RIGELL *et al.*

No. 11486.   OCTOBER 15, 1936.

*Kelley & Dickerson,* for plaintiff in error.

· *J. P. Knight,* contra.

GILBERT, Justice.   The petition of Bryant Rigell, by Ben J. Rigell and others as next friends, alleges that for more than two years before the bringing of the suit he has been mentally incompetent to manage his business affairs, and is now non compos mentis and in a sanitarium; that no legal guardian has ever been appointed for him or his estate; that the said estate is of the approximate value of $100,000 or other large sum, consisting of cash, stocks, government bonds and stamps, farms, city real estate, rentals, mercantile business, choses in action, etc.; that the defendant, J. M. Parrish, by fraudulent practices upon the incompetent Rigell, has obtained for himself an unrestricted and unlimited power of attorney under date of March 6, 1936, a copy of which is attached to the petition; that for the reasons alleged this power of attorney is void and should be surrendered and canceled;

and that the defendant is grossly mismanaging and depleting the estate (the details of which allegation are set forth hereinafter). The prayers were that a temporary receiver be appointed to take possession of and hold the properties until further order of the court; that a permanent receiver be appointed under proper bond; that full and complete accounting be made by the defendant to the court, as to all the properties, rents, interest, profits, etc., during the entire time that he has handled the affairs of the incompetent; that the power of attorney be surrendered and canceled; and for general relief. The court passed a temporary restraining order, and appointed a temporary receiver. To the petition as amended the defendant filed general and special demurrers on the grounds that no cause of action was set out; that no facts were alleged showing that any fund or property was in litigation, having no one to manage it; that the next friends were not creditors of the defendant; that the petition as amended did not show they had any interest in the property of the incompetent or of the defendant, such as would authorize the appointment of a receiver; that the petition as amended showed upon its face that there was an adequate legal remedy, the appointment of a guardian of the person and property of the incompetent; that the petition sought to cancel the power of attorney without making the incompetent a party; that the petition did not pray for any judgment or permanent relief, but sought only to have the property of Bryant Rigell placed in the hands of a receiver, though the next friends had no interest in the property as creditor or otherwise; that the petition showed that the action was not brought by Rigell by the "plaintiffs as his next friends," but was brought by them for themselves, who could not maintain the action, for the reasons stated; that, as to the application for appointment of a receiver, Bryant Rigell is the party plaintiff, and one may not petition a court for the appointment of a receiver for his own property; that the petition shows that the defendant claims no interest in the property as his own, but is acting solely as an employee of Bryant Rigell, and there is no fund in litigation; that the alleged "next friends" claim in the petition no lien upon the property, and the petition does not seek any permanent lien upon or satisfaction out of the property of Bryant Rigell, and the appointment of a receiver is the sole aim of the suit in so far as any claim against the property is concerned; that

Bryant Rigell is not a party to the suit, except by representation by said alleged next friends, and that a receiver could not be appointed for his property without his having an opportunity to be heard or to defend by himself or some one not seeking a receivership of his property. At interlocutory hearing the court overruled the demurrers, and the defendant excepted. The assignments of error are that (a) the court erred in appointing ·ex parte a temporary receiver, and (b) in overruling the general and special demurrers.

■  As to the first assignment, it was early ruled that a court of equity may, in a proper case, appoint a temporary receiver even before an answer to a petition is filed. *Jones* v. *Dougherty,* 10 *Ga.* 273 (2) ; *Williams* v. *Jenkins,* 11 *Ga.* 595; *Johns* v. *Johns,* 23 *Ga.* 31 (3). In some cases of emergency such action may be taken even before a petition is filed. *Webb* v. *Hicks,* 117 *Ga.* 335, 340 (43 S. E. 738); *Young* v. *Hamilton,* 135 *Ga.* 339 (·69 S. E. 593, 31 L. R. A. (N. S.) 1057, Ann. Cas. 1912A, 144). It will now be determined whether, under the allegations of the petition in the present case, a proper instance is presented. The action was first instituted by the named brothers and sisters as next friends of Bryant Rigell, and by amendment it was styled a suit of him by the brothers and sisters as next friends. This change was allowable by amendment, though not necessary. The two designations are in substance the same, and a proper suit may be maintained under either. *Lasseter* v. *Simpson,* 78 *Ga.* 61 (3 S. E. 243) ; *Dent* v. *Merriam,* 113 *Ga.* 83 (3) (38 S. E. 334) ; *Hart* v. *Atlanta Terminal Co.,* 128 *Ga.* 754, 773 (58 S. E. 452) ; *Linder* v. *Brown,* 137 *Ga.* 352 (8) (73 S. E. 734). It is well settled that a suit by any competent person may be maintained on behalf of one who is insane, though not already legally so adjudicated. *Reese* v. *Reese,* 89 *Ga.* 645 (15 S. E. 846) ; *Dent* v. *Merriam,* supra; *LaGrange Mills* v. *Kener,* 121 *Ga.* 429 (49 S. E. 300) ; *Wynne* v. *Fisher,* 156 *Ga.* 656 (119 S. E. 605) ; *Wilson* v. *Wilson,* 174 *Ga.* 238 (162 S. E. 540) ; *Grinnell* v. *Grinnell,* 174 *Ga.* 904 (2) (164 S. E. 681). This provision of the law is a humane and necessary one, because a person who is insane can not personally maintain a suit. *Thomas* v. *Thomas,* 145 *Ga.* 111 (88 S. E. 584) ; *Spooner* v. *Spooner,* 148 *Ga.* 612 (97 S. E. 670). Through a next friend the protection of the law may be claimed until the mental status of such person is adjudicated, and the question of

insanity may be tried whether a commission of lunacy has been issued or not. *Reese* v. *Reese,* supra; *Wilson* v. *Wilson,* supra. The petition in the present case alleges that Bryant Rigell is non compos mentis and confined in a sanitarium; that he is a man of considerable means; that no legal guardian has been appointed for him or his estate, which is of the approximate value of $100,000 or other large sum, and consists of cash, stocks, government bonds and stamps, farms, city real estate, rentals, mercantile business, notes, security deeds, mortgages and accounts (an inventory being attached to the petition); that the defendant, by fraudulent practices upon the alleged incompetent, obtained dominion over him, and obtained from him, on March 6, 1936, an unrestricted and unlimited power of attorney, a copy of which is attached to the petition, and under which the defendant is at the present time in control of the property and effects of Rigell; that in the handling of the properties and the management of the mercantile business the defendant has collected and is collecting large sums of money without accounting for the same, converting large sums to his individual use, creating debts against the alleged incompetent, committing waste, mismanaging the property, and depleting the stock of goods; that the defendant is insolvent, owning no property out of which a recovery could be had by Bryant Rigell should his sanity be restored, or by a legal representative for him or his estate; that under the management and control of the defendant the estate will soon become insolvent, although if properly handled it would amply care for the alleged incompetent for the remainder of his life; and that a receiver should be named to take charge of the property and effects and hold them subject to the order of the court, there being no adequate and complete remedy at law.

It is urged by the plaintiff in error (the defendant) that no receiver is necessary, and that a full and complete remedy was available from a court of ordinary. "'It would seem from the authorities that there is no substantial difference between a prochein ami [next friend] and a guardian ad litem. The former denomination is usually applied when the representation is for an infant plaintiff, and the latter when it is for an infant defendant. But in either case the representative of the infant is regarded as an officer of court. Story's Eq. Pl. [10th ed.] §§ 57, 58, note 2.' *Sharp* v. *Findley,* 59 *Ga.* 722, 729. The infant's nearest relation

is supposed to be the next friend. *Sanders* v. *Hinton,* 171 *Ga.* 702, 707 (156 S. E. 812), and cit. The appointment is primarily for the court, but usually the infant in his petition names the next friend, and the court by allowing the action to proceed ratifies the appointment." *Gentle* v. *Georgia Power Co.,* 179 *Ga.* 853, 854 (177 S. E. 690). All of these principles as to the relation of a next friend to an infant, and as to the next friend being an officer of the court, likewise apply when a suit of an insane person, or any one not sui juris, by next friend seeks the protection of the court. The allegations of the petition show that a valuable estate of an insane person is endangered, and might become seriously reduced or entirely destroyed, because in the control of one who is alleged to be irresponsible, insolvent, and unworthy of the confidence and trust bestowed by the power of attorney. When a power of attorney is executed by one insane at the time, it is voidable. If sane when executed, the power becomes voidable whenever the principal becomes mentally incompetent. It has been held in other jurisdictions that a power of attorney or agency is terminated by operation of law when the principal becomes insane. "A power of attorney will be terminated by the bankruptcy or insanity of either principal or agent." 21 R. C. L. 887, § 60 and cit. "As a general rule, if the principal becomes insane or otherwise mentally incapacitated before the agent has performed his undertaking, the agency is terminated or suspended by operation of law. This rule applies where there has been an adjudication of insanity, and according to some decisions such an adjudication is necessary to an application of the rule; but by the weight of authority, if the insanity is known and is of such a character as to affect the principal's exercise of his will, no such adjudication is necessary." 2 C. J. 552, § 190, and cit. Witherington *v.* Nickson, 256 Mass. 351, 356 (152 N. E. 707 (11), 709); Johnson *v.* National Bank, 237 Ill. App. 233, 237. Obviously the reason for this is that the agent can have no higher authority than the principal, and since the latter can not exercise it the agent can not.

The Code, § 55-301, provides for the appointment of a receiver, not only when property is in litigation and the rights of parties can not otherwise be fully protected, but also "when there may be a fund or property having no one to manage it." It requires no strained construction to say that the words "having no one to

manage it" have reference, not to a mere physical management, but to a proper and efficient management. Mere physical management by an unfriendly or irresponsible person might conceivably be worse than no management at all, because it may amount to mismanagement and waste, if not destruction and total loss. Notwithstanding the oft-repeated rule that the power of appointing receivers should be prudently and cautiously exercised, and, except in clear and urgent cases, should not be resorted to, the power still remains in a court of equity in a proper case, and the discretion of the court will not be disturbed unless manifestly abused. That discretion of the court is recognized in *McGarragh* v. *Bank*, 117 *Ga.* 556, 558 (43 S. E. 987), where the appointment of a receiver even without a specific prayer was upheld by this court: "One of the assignments of error was that the judge had no authority to appoint a receiver in the absence of a prayer therefor by one of the parties. This exception is not well taken. The appointment of a receiver is a matter resting in the discretion of the court, and it is its duty to make the appointment whenever it is necessary for the protection of the interests of the parties to the litigation. A receiver when appointed is an officer of the court, and he takes charge of and holds the property involved in the litigation, under the direction of the court, for the purpose of preserving it for the person in whose favor judgment may be ultimately rendered. He is not in any sense the representative of either party, even though one of them may expressly ask for his appointment. A prayer for the appointment of a receiver would amount to nothing more than a suggestion to the court that a proper case had been made for his appointment, and as a general rule it would be entirely discretionary with the court whether it acted on this suggestion or not. We can perceive no reason why the chancellor should not, on his own motion, appoint a receiver whenever a proper case is made, even though neither party to the controversy asks for or desires his appointment. Such seems to be the general practice of courts of chancery both in England and America." (Citing.) In the case from which we have just quoted there were parties with interests, and property in litigation; but notwithstanding that the next friends in the present case were not seeking any judgment for themselves and were not creditors, they were representatives of an alleged incompetent owning a valuable estate, which under the alle-

gations of the petition was being badly mismanaged, and the same power existed in the court as in the quoted decision. Under the principles above set forth and the allegations of the petition, the court did not err in appointing ex parte a receiver to take charge of the property pendente lite.

As to the ground of the general demurrer that no cause of action was set forth, it is uniformly held that an equitable petition will not be dismissed if some of the allegations and prayers call for some of the relief prayed. Under the ruling in the first division of this opinion, the allegations of the petition set forth grounds for cancellation of the power of attorney. An examination of the copy attached to the petition shows it to be the grant of a general power, but without any consideration from the donee, and not coupled with an interest. Plainly such an instrument is revocable at any time. The continuance of the power is on the theory that the donor still acquiesces in his act. The relationship· is one ·of principal and agent. If the donor in the present instance be insane, as in the petition he is alleged to be, he has not the capacity to exercise the right of revocation. A suit for him by a next friend is cognizable in equity to cancel and cause to be surrendered such a power of attorney, if it be proved on the trial of the cause that the alleged incompetent is in fact insane. This is upon the same principle that a deed under such circumstances may be ·set aside in a suit by a next friend. As to the latter, see *Dent* v. *Merriam,* supra. Likewise, it is within the power of the court to enjoin the donee from exercising any of the powers conferred by the power of attorney, from disposing of or changing the status of the assets of the incompetent, and also to provide for an accounting. As shown in the first division of this opinion, it has been held in other jurisdictions that a power of attorney becomes functus officio by operation of law when it is shown that the donor has become insane. Under the allegations of the petition it is shown that an acute and deplorable situation surrounds the alleged incompetent. If, as prayed for, the power of attorney is decreed to be void for any reason alleged, there would be no one authorized to take charge of and manage the property of the incompetent. It would be shocking to conscience and the dictates of justice if a court of equity should be either unable or unwilling to extend its protective power to preserve the property of one mentally incom-

petent from the mismanagement and wastefulness charged against and admitted by the defendant. The defendant as plaintiff in error before this court seeks a reversal of the ruling upon his demurrer, and for such purpose admits all of the allegations as to mental incapacity, mismanagement, and wastefulness. There is no provision of law which authorizes the appointment of a "permanent" receiver in the sense that he might in the present case manage the affairs of the alleged incompetent until his mental restoration, no matter how long delayed, or until his death. All of the duties which might be performed by such a receiver could be equally performed by a legal guardian, who would not only have the right but the obligation to possess himself of the property and assets of the ward and manage his affairs. The purpose of a receivership is to preserve pendente lite the property contested for, until the final disposition of all questions, legal or equitable, in the action. *Bigbee* v. *Summerour,* 101 *Ga.* 201 (28 S. E. 642); *Huggins* v. *Huggins,* 117 *Ga.* 151, 160 (43 S. E. 759); *West* v. *Mercer,* 130 *Ga.* 357, 360 (60 S. E. 859). It can not be had as a finality, if that is what is sought in the present case. But the court may, in connection with the other relief sought against the defendant, appoint a receiver on such terms as seem prudent, and until a legal guardian can be appointed and can take charge of the affairs of the ward. The petition set out grounds for all of the relief above mentioned, and the court did not err in overruling the general demurrer.

The present suit need not be discontinued or abate, because upon the appointment of a legal guardian he may, when a suitable amendment is filed, be substituted in the place of the next friends. The ruling in cases by next friends, that where, in the absence of an allegation that a legal guardian has been applied for, the petition is subject to special demurrer pointing out the defect, is a recognition of the preferred right of a legal guardian to act as the representative of one not sui juris. In the present case there is no ground of the special demurrer which goes to the failure to allege a pending application for a guardian, and without it the suit may stand until a guardian can assert his priority of control. His substitution will not involve the addition of a new party plaintiff. The next friend or the guardian is merely the representative of the incompetent. The suit is essentially that of the incom-

petent, though, as hereinbefore shown, he can not in person maintain it. The guardian, when substituted, will be able to protect the rights of the incompetent as fully as if the control were in the hands of a "permanent" receiver. By appearing in the present suit he may also probably be freed from the necessity of instituting separate and additional litigation. The avoidance of this "waste" by suitable amendment is forcibly approved in *Ellison* v. *Georgia Railroad Co.*, 87 *Ga.* 691, 715 (13 S. E. 809), in which the court, speaking through Chief Justice Bleckley, said: "Amendment being a resource against waste, and waste in pleading being, according to common sense and sound economic principles, no more justifiable than waste in anything else, no pleading, especially no declaration (that on which the existence of the whole case depends), should be cast out as worthless if it can be saved by a fair and reasonable use of the amending power. That power neither creates nor raises from the dead; its function is neither generation nor resurrection, but is rather one of development, nutrition, and medication. If the legal case which the pleader intended to make has been so far developed and differentiated in design that the court can recognize it as probably fit to become a member of the case family, though it may still be in the womb and deficient in vigor or not fully developed in some of the essential parts or organs which would enable it to live as an independent being, indeed, if it be little more than a mere germ, the law has quickened it, and it is within the reach of amendment. . . Amendment of substance aids a declaration to live and augment its life, and not merely to exert the vital force which it already possesses." Especially in a court of equity, where the full protection of the incompetent may be properly afforded in the one action is it desirable, as an avoidance of "waste," that, after the appointment of a legal guardian, further and additional litigation be rendered unnecessary. The decision in *Rogers* v. *Rogers,* 180 *Ga.* 300 (178 S. E. 698), in no way conflicts with what is here ruled. The suit in the *Rogers* case was not brought as next friends of the incompetents, but was brought by one merely claiming that she felt an interest in their welfare and their rights. The facts of the cases are also different.

■ For the reasons shown in the foregoing part of this opinion, there is no merit in any of the special grounds of the demurrer.

As to the ground that Bryant Rigell was not made a party, it may be further stated that the suit is proceeding in his name as plaintiff, represented by next friends because of his alleged insanity. If in fact he be competent, and is able to assert his right to appear in the suit in person and seek direction as one sui juris may do, the door is open to him.

*Judgment affirmed. All the Justices concur, except Atkinson, J., absent because of illness.*