LESTER, administratrix, *v.* BAXTER *et al.; et vice versa.*

Nos. 11695, 11719. May 13, 1937.

*Edward F. Taylor, James C. Estes,* and *E. W. Maynard,* for plaintiff.

*L. D. Moore* and *Carlisle & Bootle,* for defendants.

ATKINSON, Justice. ■ Four persons individually executed a joint promissory note for a loan of $4000, and a joint security deed conveying several parcels of realty separately owned by the grantors. The individuals were members and "trustees" of a church. The object of the loan was to save church property from "forced sale." The money was paid by the lender directly to the holder of two outstanding executions having special liens on the church property. The executions were duly transferred to the makers of the note and security deed, who in turn duly transferred them to the lender. The lender advertised all the realty for sale in pursuance of the power contained in the security deed. The administratrix of the estate of one of the makers, since deceased, brought suit against the other comakers and the lender, to annul the deed and enjoin the sale. In addition to the above, the petition alleged as grounds of relief that the intestate could not read or write, and did not have strength of mind equal to a clear and full understanding of his act in making the note and security deed, but believed that he was signing officially only binding church property, and not assuming personal liability; that the inclusion of his individual property was a fraud perpetrated by the comakers; that the comakers, knowing of his mental con-

■

dition and ownership of property, conspired to get him into the church membership and on the official board, with the object of having him assume the indebtedness of the church and convey his property; that the conduct of the comakers was a "scheme and device" to bring about the object stated. The allegations were insufficient to charge incompetency of the intestate to contract, or to charge fraud on the part of the lender inducing the intestate to make the contract; and consequently no cause of action was alleged for the relief prayed for against the lender. While in general terms charging conspiracy, scheme, device and fraud by the comakers, and ignorance by the intestate and his belief that he was signing only in a representative capacity, there were no allegations of fact as to acts or conduct or statements by the comakers to support such general allegations; and consequently they were mere conclusions of the pleader and were insufficient to charge incompetency of the intestate to contract, or fraud on the part of the comakers. The additional allegation that funds paid in by the congregation of the church to pay the debt had been diverted by the intestate's comakers to other purposes was insufficient ground for annulment of the security deed and enjoining the sale. Consequently the original petition was insufficient to authorize an amendment at the final trial, alleging that the lender while holding the executions transferred to him allowed them to become dormant, causing injury to the estate of plaintiff's intestate.

■ The court ruled out as irrelevant and immaterial certain testimony of a witness for the defendants, delivered on cross-examination, as to the character and value of certain church properties. Error was assigned upon the ruling, on the ground that the evidence was material as bearing upon the duty of the lender to enforce the executions against the church, and showing loss to the plaintiff resulting from failure of the lender to keep the executions in life. This ruling involves in part the phase of the case dealt with in the preceding division, holding that the court properly rejected the proffered amendment alleging damages resulting from dormancy of the judgments, occurring while in the hands of the lender as transferee. The amendment having been properly disallowed, the testimony mentioned above as having been excluded by the court was not material to any issue made by the pleadings.

The court did not err, as complained of in ground 16 of the motion for new trial, in refusing a request to charge, based on the failure of the lender to keep the judgments in life as set forth in the amendment which was disallowed by the court and referred to in the first division of this opinion.

■ The court refused a request to charge: "It is claimed by the plaintiff that on the date when the security deed and note for $4000.00 from . . [the makers] to . . [the lender] were signed and delivered, . . [the intestate] was mentally incompetent to execute the contract. In that connection, I charge you a person is insane or mentally incompetent when he is not possessed of mind and reason equal to a full and clear understanding of the nature and consequence of his act in making the contract." The sentence last quoted states a principle of law that has several times been approved by this court, where it was given in charge by the judge. *Barlow* v. *Strange,* 120 *Ga.* 1015 (2) (48 S. E. 344); *DeNieff* v. *Howell,* 138 *Ga.* 248 (5) (75 S. E. 202); *Durrett* v. *McWhorter,* 161 *Ga.* 179 (9) 186 (129 S. E. 870); *Taylor* v. *Warren,* 175 *Ga.* 800 (166 S. E. 225). But the refusal of the request to charge the principle is not cause for reversal in this case. In *Atlanta Banking & Savings Co.* v. *Johnson,* 179 *Ga.* 313 (175 S. E. 904, 95 A. L. R. 1436), it was held: "A petition to cancel a security deed alleged to have been executed and delivered to a bank by an insane person since deceased, not alleging that she had ever been adjudged insane, or that the bank did not act in good faith or that it had knowledge of or reasonable ground to suspect the insanity, and (save by averring that the consideration of the deed had been dissipated by the decedent, and that none of it came into the hands of the plaintiff or could be restored) not attempting to excuse or explain a failure to do equity by restoring the status, was subject to dismissal on demurrer." In the instant case a finding that the intestate had ever been adjudged insane, or that the lender did not act in good faith, or that he had knowledge or reasonable ground to suspect insanity, would not have been authorized by the pleadings and evidence. In these circumstances the refusal of the request to charge was not harmful to the plaintiff.

■ Several grounds of the motion for a new trial complain of excerpts from the charge of the court referring to the security

deed, stating that plaintiff contended that the security deed should be set aside and canceled; the criticism being that the charge was an incorrect statement of the contentions of the plaintiff, for that she claimed only that the deed should be set aside and canceled in so far as it affected her and her property, and did not contend that the whole deed should be set aside. Any inaccuracy in the charge was unlikely to produce confusion in the minds of the jury, and is not cause for reversal.

■ Complaint is made of an instruction that the jury shall on consideration of all the evidence say whether or not the intestate was a person of sound mind, and whether or not the lender knew he was a person of sound mind, and "has he ever been committed to the asylum, or has there been any lunacy commission found against him? How did he act as to other transactions? What sort of business was he engaged in? How did he conduct himself with reference to other affairs, the ordinary affairs of business life?" There was no evidence that the intestate had been adjudged insane or had ever been committed to an asylum, but whether he had or not been so adjudged or committed were matters which the jury might take into consideration in passing upon his mental capacity. The charge was not erroneous, as contended, on the ground that it was unauthorized by the evidence and was argumentative.

■ The court instructed the jury that another reason urged by the plaintiff why the note and deed should be set aside was that even if plaintiff's intestate was of sound mind he was fraudulently induced to sign. The court then proceeded to charge that if the lender practiced any fraud or deception on him and thereby induced him to sign the paper, that fraud would void the contract, but unless the lender practiced fraud on him he would be bound so far as the lender was concerned if fraud was practiced on him by his comakers of the deed, if the lender was not a party to such a fraud. The charge was not erroneous, as contended, on the ground that it excluded from consideration of the jury the contention of the plaintiff that after the filing of the petition containing the charges of fraud, the lender in conjunction with the intestate's comakers arranged for sale at an inadequate price of other property contained in the security deed, which was

of sufficient value to have fully paid the indebtedness represented by the note and deed.

The court stated that the plaintiff contended that the intestate's comakers received contributions from the church for the purpose of paying off the church debt and diverted the money instead of paying the debt, and then instructed the jury that if the lender had nothing to do with that he would not be chargeable, but that if he engineered and participated in that sort of plan he would be responsible and his deed should be canceled. This instruction was not erroneous as against the plaintiff, as contended, on the ground that it disregarded the relief sought by plaintiff as against the intestate's comakers.

The court stated that it was a contention of the plaintiff that at an interlocutory hearing for injunction the lender agreed that he would not foreclose the deed against the plaintiff's intestate, and that he was bound by such agreement and estopped from foreclosing the deed. The judge then instructed the jury that the order of the judge did not have such effect, that it only enjoined foreclosure until the jury could pass upon the contentions in the case. The charge was not erroneous, as contended, on the ground that under the evidence the lender was bound by his admission in judicio at the interlocutory hearing, and that the plaintiff was entitled to the judgment entered by consent of the lender in open court.

The court stated the contention of the plaintiff that the deed should be canceled because it was a partnership debt, and that the makers of the deed were partners with respect to the lender; and then proceeded to charge that the contract did not make any partnership debt, that it was a joint and several obligation of all the makers, and that, no other contract appearing in the case, the makers would be jointly liable each to pay his pro rata of the debt. The charge was not erroneous as contended, the insistence being that it was an inaccurate statement of law, the transaction being in fact and in law a partnership debt if it had validity. Neither was it erroneous, as contended, on the ground that it was an expression of an opinion by the court as to what had been proved.

The court charged that if the makers had a contract with the lender that if one of them should pay only one dollar or a

thousand dollars or five hundred dollars, the lender would be bound by whatever contract he might make with him, but if he had a contract with the intestate's three comakers as to some other method of paying the money or some other division of the debt amongst them, that would not affect the lender unless he had knowledge of it and agreed to it. This charge was not cause for a reversal on the ground that it was unauthorized by the pleadings and the evidence and was confusing to the jury.

■ The judge charged: "Under the contract in evidence they are, each one of them, liable to pay $1000 apiece on that mortgage, and they are liable to keep on paying it, if they are individually liable as well as jointly liable. If one of them pays $1000, the others would have to pay the balance; and if some can pay their part, then those who are left will have to pay whatever the balance is, because it is a joint and several note; and if the undertaking of each one of them is to pay $1000 as between themselves, . . [the intestate] could not complain if he had any contract with . . '[the lender] to pay a smaller amount.. . ' . [The intestate] could not complain if the others paid their $1000 and he was called upon to pay his $1000." This charge was not erroneous on the ground that it was an expression of an opinion by the court to the effect that plaintiff was liable on the note as a matter of law, and that the pleadings and evidence did not authorize the last part of the charge.

■ In ground 11 of the motion for a new trial complaint is made that the court restricted the issues to be decided in such manner as to exclude the contention of the plaintiff in reference to the dormancy of the judgments, as set forth in the amendment which was disallowed, as more fully appears in the first division of this opinion. The charge was not erroneous on the ground that it excluded the matters mentioned.

■ After the jury had been charged, a juror inquired of the court whether the deposition of the lender should "be considered with the same force and taken just the same as if he had been here and testified himself," to which the court replied in the affirmative. This instruction was not erroneous, as contended, on the grounds that it was an invasion of the province of the jury and was argumentative.

The charge complained of in ground 14 of the motion, that "the purpose of this bill is to cancel a deed which is alleged to have been made by" the four makers, naming them, "to secure a debt for a loan of $4000 to these four people," was not erroneous, as contended, on the ground that it was too restrictive and did not take into account the relief which the plaintiff sought against the intestate's comakers, based on the contention that such comakers misrepresented to the intestate, who could neither read nor write, that the paper which they induced him to sign was a security deed conveying title only to the property of the church; whereas the said paper actually conveyed the home of the intestate for the purpose of paying a debt owed solely by the church.

The court did not err, as complained in ground 17, in refusing a request to charge the jury that the plaintiff contended that the intestate was mentally incompetent to enter into the contract evidenced by the security deed and note; but further, that if any contract resulted, the result of the entire transaction between the four makers was a partnership transaction whereby such partnership purchased the two outstanding executions, and thus would have become entitled jointly to any profits that might accrue from it or subject to any losses that might result from it. And, "as to that, I charge you that a joint interest in partnership property or a joint interest in the profits and losses of a business would constitute a partnership; and if you conclude that a partnership thus existed among them, and you further find that" the lender after the death of the intestate "entered into a contract with the other three parties, by which the time of payment of the obligation, or any part of it, was extended, then this would operate to release . . [the intestate] or his estate from all liability on the obligation."

After verdict for the defendants and while the motion for a new trial was pending, the defendants amended their answer and prayed for the appointment of a receiver to take charge of the property of the plaintiff's intestate, described in the security deed, on the grounds that the judgment of the court in favor of defendants and against the grant of injunction to prevent exercise of the power of sale was suspended in virtue of the motion for a new trial; that since the filing of the suit the plaintiff had become insolvent; that the plaintiff had allowed taxes to accumu-

late for the years 1931 to 1935, inclusive, thereby depreciating the value of the property and causing it to be inadequate to secure the debt; that the plaintiff had failed to furnish the lender a policy of insurance as provided in the security deed; and that the plaintiff has continued to occupy the premises since the death of the intestate, without accounting for its rental value. It was urged that the amendment, coming after verdict and decree, came too late; this under authority of the Code, § 81-1301, and *Southern Mutual Insurance Co.* v. *Turnley,* 100 *Ga.* 296 (7) (27 S. E. 975); *Curelon* v. *Curelon,* 120 *Ga.* 559 (48 S. E. 162); *Georgia Motor Sales Inc.* v. *Wade,* 37 *Ga. App.* 24 (138 S. E. 797), and cit. Those decisions do not refer to appointment of a receiver. Relief of that character is peculiar, and has its place among equitable remedies looking to complete justice between the parties with respect to the property in question. It was held, in *McGarrah* v. *Bank of Southwestern Georgia,* 117 *Ga.* 556 (43 S. E. 987): "A receiver may be appointed in a proper case, though no prayer for his appointment is made by either party." In the opinion it was said: "The appointment of a receiver is a matter resting in the discretion of the court, and it is its duty to make the appointment whenever it is necessary for the protection of the interests of the parties to the litigation." It was held, in *Voyles* v. *Federal Land Bank of Columbia,* 182 *Ga.* 569 (186 S. E. 405):

"An ancillary petition may be filed after as well as before a decree, to enable a court of equity to effectuate its own decree by ordering one put in possession of property where entitled thereto under its original decree, in order to avoid the further litigation of questions once settled between the same parties. . . The court did not abuse its discretion in appointing a receiver." See also *Parrish* v. *Rigell,* 183 *Ga.* 218 (188 S. E. 15, 107 A. L. R. 1385).

In 23 R. C. L. 37, § 36, it is stated: "A receiver may . . be appointed after decree or judgment, if the facts of the case are such as to warrant it, without the filing of a supplemental bill, as where it is necessary to prevent a waste, destruction, injury to, or removal of, the property in controversy, or other act whereby the effectiveness of the decree may be threatened. In a proper case a receiver may be appointed pending an appeal." In Chicago &c. Ry. Co. *v.* St. Clair, 144 Ind. 371 (2) (42 N. E. 225), it was

held: "A receiver may be appointed, not only after final decree in the action, but even after an appeal has been perfected, though such relief was not demanded in the original bill." In the opinion it was said: "In Brinkman *v.* Ritzinger, 82 Ind. 358, a receiver had been appointed, not only after final decree, but after an appeal, and this court said: 'He may be appointed after the decree, while the decree remains in force, whether such relief was prayed for in the complaint or not;' citing authorities. And it was there further said: 'That suit, having been appealed to the Supreme Court, may be regarded as yet pending for the purpose of an application for a receiver of the rents and profits, and we think the court that rendered the decree appealed from was the proper court to hear and determine such application. Whether the application be made by motion or petition, or in the form of a complaint, is,' under our practice, immaterial in such case.' The office of a receiver is, manifestly, to aid, by the preservation of property, in making effective the court's decree. It has always been regarded as an auxiliary or ancillary proceeding, and rarely, if ever, as an independent proceeding. If occurrences arise after the decree which threaten the effectiveness of the decree, why should not the power exist to then make the appointment?" The doctrine is also stated in many cases cited in note to Cameron *v.* Groveland. Improvement Co., 72 Am. St. R. 26, 39, 40; 53 C. J. 55, 57, §§ 46, 51, notes 38, 81; 17 Enc. Pl. & Pr. 712(c). In the light of the foregoing, the court having jurisdiction could act when the necessity for relief arose, and in the instant case could appoint a receiver after the verdict and decree and while the case .was pending on motion for a new trial. The amendment did not come too late. The amendment alleged grounds for such relief, and the evidence was sufficient to authorize appointment of a receiver.

■ The ruling announced in headnote 17 does not require elaboration.

*Judgment affirmed on the main bill of exceptions. Cross bill of exceptions dismissed. All the Justices concur, except Russell, Chief Justice, and Hutcheson, Justice, who dissent.*